IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DEANGELO BRUCE,**                           Case Number 1:10 CV 1784

      Petitioner,                            Judge James G. Carr

        v.                                REPORT AND RECOMMENDATION

**TERRY TIBBALS,** Warden,[1]

      Respondent.                            Magistrate Judge James R. Knepp II

## Introduction

*Pro se* Petitioner DeAngelo Bruce, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent, Warden Terry Tibbals, filed a Return of Writ (Doc. 7), with attached exhibits (Doc. 7-1). Although the undersigned granted Petitioner's motion for a 30 day extension to March 9, 2011 to file his Traverse (Doc. 10), Petitioner did not do so. Petitioner did file a motion for appointed counsel. (Doc. 9).

The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). For the reasons discussed below, the undersigned denies the motion for appointed counsel and recommends the Petition be denied.

## Factual Background

The Ohio Eighth District Court of Appeals set forth the facts of this case on direct appeal in *State v. Bruce*, 2009 WL 626112 (Ohio App. 8 Dist.):

---

[1] Petitioner properly named as Respondent Keith Smith, who was then the Warden of the Mansfield Correctional Institution. However, since Petitioner initiated this action, Smith was replaced by Terry Tibbals. Because Tibbals is the individual who currently has custody of Petitioner, Tibbals is now the proper Respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases.

{¶ 3} The victim, who will be identified only as "Eric," testified at trial as follows. In December 2006, when he was 18 years old, he went to live at the Emergency Disabled Men's Shelter in Cleveland. Earlier that year he had been living with his mother; but, after they were evicted from their apartment and later forced to leave the Harbor Light Shelter, his mother went to a woman's shelter and he went to the men's shelter. It was the first time he was ever on his own.

{¶ 4} Eric explained that due to shelter rules, he had to leave the shelter each day by 7:00 a.m. and could not return until evening. He spent his days at the Cleveland Public Library nearby and returned to the shelter at about 6:00 p.m. He did not eat lunch, but was able to get an evening meal at the shelter. He stayed in contact with his mother through the shelter's director.

{¶ 5} Eric said he was introduced to appellant at the shelter, and in January 2007 started going places during the day with him. In February, appellant took Eric to visit appellant's cousin and sister, both of whom lived in Cleveland. Appellant introduced Eric to the women as his son. Eric said he liked to go to both women's houses and play video games with their children. At night, he and appellant returned to the shelter. Eric said that in February, appellant's cousin Felicia invited him to stay at her house rather than return to the shelter. He moved in, and slept in the bedroom with Felicia's three young children.

{¶ 6} Eric testified that on five occasions in March, appellant had anal sex with him at Felicia's house against his will. He testified that the first time was on March 18, 2007 when he was getting ready to go to sleep. He said appellant came into the bedroom, held a butter knife to his throat and put his "private part" into Eric's "butt hole." Eric said that afterwards blood came out of his "butt hole." Eric said the second time was on March 23, 2007 in the afternoon, when no one was at the house except the two of them. He testified that appellant pulled down his pants, bent him over the couch, and again had anal sex with him. He said he kept telling appellant his "butt was hurting" but appellant did not stop. Eric said the third time was on March 30, 2007, when he and appellant were at the house with Felicia's five-year-old son and two-year-old daughter. He said he was lying on the floor in the living room and appellant pulled down his pants and had anal sex with him on the floor. He testified that he did not want appellant to do this and that he was afraid of appellant. Eric also described two other times that appellant had anal sex with him, once in the "parent's bedroom" at the house, and another time in the "kids' bedroom" while Felicia's children were sleeping.

{¶ 7} After the fifth incident, Eric told one of Felicia's cousins what appellant did to him. This led to an angry confrontation between Felicia's friends and appellant at a corner market. The police were called and allegations of rape were made against appellant.

2

These factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## Procedural Background

The May 2007 term of the Cuyahoga County Grand Jury indicted Petitioner on eight counts of rape, two counts of kidnapping with sexual motivation, and one count of disseminating obscene matter to juveniles. (Ex. 1, Doc. 7-1, at 1-11). Each of the rape and kidnapping charges contained a notice of prior conviction, a sexually violent predator specification, and a repeat violent offender specification. (*Id.* at 1-10). Petitioner pleaded not guilty to all counts of the indictment. (Ex. 2, Doc. 7-1, at 12). Petitioner waived his right to a jury trial on the notice of prior conviction and the sexually violent predator specifications. (Ex. 3, Doc. 7-1, at 13). During the November 2007 trial, the court dismissed the charge of disseminating obscene materials to juveniles. (Ex. 4, Doc. 7-1, at 14).

The jury convicted Petitioner of the rape charges in Counts One, Two, and Four, and the kidnapping charges in Counts Three and Ten, and acquitted him of the remaining five rape charges. (Ex. 5, Doc. 7-1, at 15). At a bench trial, the trial court found Petitioner guilty of the notice of prior conviction, the sexually violent predator specification, and the repeat violent offender specification. (Ex. 6, Doc. 7-1, at 16). The trial court sentenced Petitioner to a total of fifteen years to life, including five years on the repeat violent offender specification. (Ex. 7, Doc. 7-1, at 17).

Through counsel, Petitioner filed a timely notice of appeal to Ohio's Eighth District Court of Appeals. (Ex. 8, Doc. 7-1, at 19). He presented ten assignments of error:

1. The repeat violent offender specification is unconstitutional as it permits an offender's sentence to be enhanced based on judicial fact finding and does not allow for a jury trial.

2. The trial court erred in failing to state its findings explaining the additional prison time.

3. Appellant's state constitutional right to a grand jury indictment and state and federal constitutional rights to due process were violated where his indictment omitted all the essential elements of the sexually violent predator specification.

4. Defendant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 10 of the Ohio Constitution.

5. The trial court erred in finding the appellant guilty of the sexually violent offender specification.

6. The appellant's conviction for rape, as charged in count one, is against the manifest weight of the evidence.

7. The appellant's convictions for rape, as charged in count two, is not supported by sufficient evidence where the state failed to present evidence of substantial impairment due to a mental condition.

8. The appellant's convictions for kidnapping are not supported by sufficient evidence.

9. The appellant was denied a fair trial when witnesses repeatedly referenced his prior criminal record and the trial court failed to provide a curative jury instruction.

10. Trial counsel was ineffective where he failed to object to repeated testimony regarding the appellant's prior criminal history.

(Ex. 9, Doc. 7-1, at 36-77). The state filed an opposition brief. (Ex. 10, Doc. 7-1, at 99-121). On

March 23, 2009, the Eighth District Court of Appeals affirmed Petitioner's conviction. (Ex. 11, Doc.

7-1, at 122-142); *Bruce*, 2009 WL 626112.

4

On May 7, 2009, Petitioner, through counsel, filed a notice of appeal to the Ohio Supreme Court. (Ex. 12, Doc. 7-1, at 143-44). In his memorandum in support of jurisdiction, Petitioner raised three propositions of law:

1.     The repeat violent offender specification is unconstitutional as it permits an offender's sentence to be enhanced based only on judicial fact-finding and does not allow for a jury trial.

2.     *Oregon v. Ice*, *supra*, applies to R.C. 2919.14(D); therefore, the court shall state its findings explaining a sentence imposed in accordance with the [repeat violent offender] specification.

3.     An indictment that includes a sexual violent predator specification is defective if the indictment fails to identify all the elements underpinning the specification.

(Ex. 13, Doc. 7-1, at 145-56). The state filed a response. (Ex. 14, Doc. 7-1, at 179-89). On November 24, 2009, the Ohio Supreme Court accepted the appeal on Petitioner's first proposition of law, and affirmed the decision of the Court of Appeals "on the authority of *State v. Hunter*, 123 Ohio St. 3d 164, 2009-Ohio-4147, 915 N.E.2d 292." (Ex. 15, Doc. 7-1, at 190).

Petitioner, acting *pro se*, then filed the pending habeas Petition – dated July 14, 2010, and filed in this Court August 12, 2010 – raising two grounds for relief:

**Ground One:** "Assistance of Counsel" (Americans With Disabilities Act of 1990). Here In After (A.D.A.)  "Right to Fair Trial".

**Supporting Facts:** Petitioner was denied the due course of proceedings through the state[']s deliberate assignment of counsel whom litigated in collusion with prosecutors (reckless disregard to constitutional g[ua]rantees) in favor of providing Petitioner the required representation to conform to the provisions outlined in the (A.D.A.) Provisions which prohibit discrimination on basis of disability in all state and local government services, denying Petitioner of due process of law. 14th Amend. U.S. Const.

**Ground Two:** Refer to Assignment of Errors and Merit Brief.

**Supporting Facts:** Appendix I. Petitioner has attached the assignment of errors as grounds for relief for deprivation of (A.D.A.) in providing Petitioner the due course of proceedings g[ua]ranteed through the "Due Process" clause of 14th Amend. U.S. Const. (Pgs. one - thirty-four).

(Doc. 1, at 5, 7). Respondent filed a Return of Writ (Doc. 7), and as noted above, Petitioner did not file a Traverse even though he was granted an extension of time to do so. Petitioner did file a "Motion for Order Appointing Counsel", in which he requests counsel under Section 3006A of Title 18. (Doc. 9, at 1). In his memorandum in support, he presents arguments about his competency to stand trial. (*Id.* at 2-4).

### Discussion

Respondent argues the Petition must be dismissed for three reasons: 1) it "is not signed and thus cannot be considered"; 2) it "fails to set forth claims of constitutional violations"; and 3) even if the Petition is read to set forth claims of ineffective assistance of counsel, those claims are either procedurally defaulted, or unexhausted. (Doc. 7, at 8, 10).[2]

"The allegations of a pro se habeas petition, though vague and conclusory, are entitled to a liberal construction," and "[t]he appropriate liberal construction requires active interpretation in some cases to construe a pro se petition to encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (internal quotations and citations omitted). The undersigned therefore reads Petitioner's first ground as a claim of ineffective assistance of trial counsel and construes his second ground – "Petitioner has attached the assignment of errors as grounds for relief" (Doc. 1, at 7) – as attempting to obtain habeas relief on each of the claims raised to the Ohio

---

[2] Respondent is correct that Petitioner did not sign the Petition as required by Rule 2(c)(5) of the Rules Governing Section 2254 cases. However, rather than allow Petitioner the opportunity to resubmit his Petition with a proper signature, the undersigned recommends the Petition be dismissed for the reasons discussed below.

6

appellate court. Respondent is correct that the Petition is not a model of clarity, however, Petitioner is not entitled to relief even under this liberal construction.

### Exhaustion & Procedural Default

To obtain habeas relief, a petitioner must first exhaust all available state court remedies. 28 U.S.C. § 2254(b)(1). This requirement is satisfied only if the petitioner's claim is "fairly presented" to the state courts before seeking relief in the federal courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking *one complete round* of the State's established appellate review process." (emphasis added)).

In other words, a petitioner may not use federal habeas review to assert a federal constitutional right that he failed to fully present to the state courts because of a procedural default. *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977). If a petitioner can no longer present his claims to a state court due to a procedural default, then he has waived those claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Demonstrating "cause" requires  a petitioner "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of

prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

### Ineffective Assistance of Counsel

Respondent is correct that any claim of ineffective assistance of trial counsel is procedurally defaulted. Although Petitioner raised some challenges to his trial counsel's effectiveness to the Ohio Appellate Court, he did not further raise them to the Ohio Supreme Court. Petitioner therefore did not "fairly present" those claims. *See* 28 U.S.C. § 2254(b)(1), (c); *O'Sullivan*, 526 U.S. at 845. Petitioner cannot now raise these issues to the Ohio Supreme Court as he already appealed the appellate court's decision on other grounds, and any attempt to bring a subsequent appeal would be barred by *res judicata*. *State v. Cole*, 2 Ohio St. 3d 112, 113-4 (1982); *see also Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th Cir. 2008)  (holding Ohio's application of *res judicata* pursuant to *Cole* is an actually enforced, adequate and independent state ground on which Ohio state courts consistently refuse to review the merits of a defendant's claims).

To the extent Petitioner attempts to raise any *new* ineffective assistance of trial counsel claims, such as his claim that his counsel "litigated in collusion with prosecutors" (Doc. 1, at 5), or was ineffective "for failure to file [a] motion for [a] competency evaluation" (Doc. 9, at 3), those claims have not been "fairly presented" to the state courts on direct appeal. *O'Sullivan*, 526 U.S. at 845. Because these claims could have been raised on appeal and were not, they are also defaulted.

Therefore, all of Petitioner's claims regarding ineffective assistance of trial counsel are procedurally defaulted unless he can show cause and prejudice. Petitioner has not asserted any argument for cause and prejudice to overcome these defaults nor does the Court see any basis.

Although Petitioner might attempt to argue his appellate counsel was ineffective for failing to raise these claims in the first instance before the appellate court or Ohio Supreme Court – the cause of the default – he has not presented an ineffective assistance of appellate counsel claim to the state courts. *See Dietz v. Money*, 391 F.3d 804, 809 (6th Cir. 2004) ("A claim of ineffective assistance of counsel must be presented to the state courts before it may be used as cause for procedural default." (citing *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000)). Ohio Appellate Rule 26(B) allows defendants to apply to reopen an appeal to raise claims appellate counsel failed to raise. Such applications must be made within 90 days of the journalization of the appellate decision, or later with a showing of good cause. Ohio App. R. 26(B).  Petitioner's 90 days have elapsed, and the claim is therefore not only unexhausted, but unless he could show good cause, procedurally defaulted.  *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 436 n.7 (6th Cir. 2006) (ineffective assistance of appellate counsel claim defaulted when petitioner failed to file a motion to reopen in the Ohio Court of Appeals within time specified by Ohio App. R. 26(B)). Because Petitioner cannot show cause and prejudice, his claims are defaulted.

### *Assignments of Error Four Through Ten on Direct Appeal & Due Process Right to Competency Hearing/Psychiatric Examination*

By the same rationale, Petitioner's fourth through tenth claims raised in his appellate brief in his direct appeal are defaulted because they were not raised to the Ohio Supreme Court – and therefore not "fairly presented" – and he is now barred from raising them by *res judicata*. *O'Sullivan*, 526 U.S. at 845; *Fautenberry,* 515 F.3d at 633. The same is true for Petitioner's claim – made in his Memorandum in Support of his Motion for Order Appointing Counsel – that the trial court violated his due process right to a competency hearing. This claim was never raised to the Ohio courts, and defaulted because there is no mechanism through which Petitioner could now do

so. For the same reasons as discussed above, Petitioner has not shown cause and prejudice to overcome these defaults.

***First Assignment of Error on Direct Appeal – Repeat Violent Offender Specification is Unconstitutional as it Permits Sentencing Enhancement Based on Judicial Fact-finding***

Petitioner exhausted the first assignment of error he raised on direct appeal. (*See* Exs. 9 & 13, Doc. 7-1, at 51-60,151-52).  He argued the repeat violent offender specification violated the Sixth Amendment because it allows sentencing enhancement based on judicial fact-finding.

The Ohio Supreme Court rejected this claim, citing its opinion in *State v. Hunter*, 123 Ohio St. 3d 164 (2009). (Ex. 15, Doc. 7-1, at 190). In *Hunter*, the court first held that its earlier decision in *State v. Foster*, 109 Ohio St. 3d 1 (2006), did not eliminate the repeat violent offender specification altogether, but rather "excised judicial fact-finding from former R.C. 2929.14(D)(2)". *Hunter*, 123 Ohio St. 3d at 169. The court then held that designating an offender as a repeat violent offender does not violate the Sixth Amendment:

> {¶ 34} Even if Hunter had not waived his right to a jury trial or stipulated to the required facts, the fact-finding conducted by the trial court to designate him as a repeat violent offender pursuant to former R.C. 2929.01(DD) would not have violated the Sixth Amendment.

> {¶ 35} In *Oregon v. Ice* (2009), --- U.S. ----, 129 S.Ct. 711, 714, 172 L.Ed.2d 517, the Supreme Court reiterated its holdings in *Apprendi* and *Blakely* that "it is within the jury's province to determine any fact (other than the existence of a prior conviction) that increases the maximum punishment authorized for a particular offense." (Emphasis added.) And as the Supreme Court noted in *Apprendi*, the Sixth Amendment does not bar judicial consideration of a defendant's prior convictions at sentencing because " 'recidivism * * * is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.' " 530 U.S. at 488, 120 S.Ct. 2348, 147 L.Ed.2d 435, quoting *Almendarez-Torres v. United States* (1998), 523 U.S. 224, 244, 118 S.Ct. 1219, 140 L.Ed.2d 350.

> {¶ 36} Significantly, the Sixth Amendment does not limit a sentencing court's consideration to the existence of a prior conviction. On the contrary, the United States Supreme Court has held that courts may consider the information contained

10

in court documents that are related to the prior conviction. In *Shepard v. United States* (2005), 544 U.S. 13, 19-20, 125 S.Ct. 1254, 161 L.Ed.2d 205, the court held that a sentencing court, when determining whether a prior conviction warrants an enhanced penalty under the federal Armed Career Criminal Act ("ACCA"), may consider "the charging documents, jury instructions, a bench-trial judge's findings of fact and conclusions of law, the terms of a plea agreement, a transcript of the plea colloquy or other comparable judicial records." *See also Taylor v. United States* (1990), 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (holding that for purposes of penalty enhancement, a sentencing court may determine the nature of a predicate offense from the statutory elements, charging documents, and jury instructions).

{¶ 37} Relying on the decisions in *Apprendi*, *Blakely*, *Shepard*, and *Taylor*, several of our sister states have also held that sentencing courts may look beyond the mere existence of a prior conviction without violating the Sixth Amendment. . . . .

{¶ 38} Thus, pursuant to *Shepard*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205, we hold that when designating an offender as a repeat violent offender pursuant to former R.C. 2929.01(DD), a trial court does not violate the Sixth Amendment by considering relevant information about the offender's prior conviction that is part of the judicial record.

{¶ 39} In this case, in order to declare Hunter a repeat violent offender, the court had to determine whether he had a prior conviction and had served a prison term for a felony of the first or second degree that resulted in physical harm to the victim. Former R.C. 2929.01(DD)(1) and (2)(a)(i). These facts may be readily determined from the indictment and sentencing entry for his 1990 conviction for felonious assault with a specification of physical harm and his resulting sentence of eight to 15 years' incarceration. The trial court did not violate Hunter's constitutional rights by considering these documents, which are "judicial record evidence" created in connection with his prior conviction. *Shepard*, 544 U.S. at 20, 125 S.Ct. 1254, 161 L.Ed.2d 205. Moreover, the findings required by former R.C. 2929.01(DD) pertain directly to the issue of recidivism, which has traditionally been within the purview of the sentencing court, not the jury, *Almendarez-Torres*, 523 U.S. at 244, 118 S.Ct. 1219, 140 L.Ed.2d 350, and Hunter has not suggested that the trial court's findings in this case are erroneous.

{¶ 40} Accordingly, the trial court did not violate Hunter's constitutional rights or decisions of this court or the United States Supreme Court by designating him a repeat violent offender pursuant to former R.C. 2929.01(DD) and by imposing an enhanced penalty. The court of appeals properly affirmed that judgment, and we therefore affirm its decision.

123 Ohio St. 3d at 171-72.

*Standard of Review*

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409-11.

*Analysis*

The repeat violent offender statute applicable to Petitioner's case read:

"Repeat violent offender" means a person about whom both of the following apply:
    (1) The person is being sentenced for committing or for complicity in committing any of the following:
        (a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;
        (b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (DD)(1)(a) of this section.
    (2) The person previously was convicted of or pleaded guilty to an offense described in division (DD)(1)(a) or (b) of this section.

Here, to apply the repeat violent offender specification, the court simply had to find 1) Petitioner was being sentenced for "a felony of the first or second degree that is an offense of violence" and 2) Petitioner "previously was convicted of or pleaded guilty to" "a felony of the first or second

12

degree that is an offense of violence." Former Rev. Code §§ 2929.01(DD)(1)-(2). Rape –
Petitioner's previous and current conviction – is a first degree felony and an offense of violence
under Ohio law. Rev. Code § 2907.02(B); 2901.01(A)(9)(a). "[T]he Supreme Court has uniformly
excepted 'the fact of a prior conviction' from its general rule that sentence-enhancing facts must be
found by a jury and proved beyond a reasonable doubt." *U.S. v. Beasley*, 442 F.3d 386, 691 (6th Cir.
2006) (citing *Booker*, 543 U.S. at 244; *Apprendi*, 530 U.S. at 490). Additionally, the Ohio Supreme
Court's analysis – finding it constitutional for a trial court to consider "judicial record evidence"
attendant to a prior conviction to determine if a prior offense resulted in physical harm – is not an
unreasonable application of clearly established federal law. *Cf. id.* ("[W]e have held that a district
court does not violate the Sixth Amendment by determining the fact *and nature* of a defendant's
prior convictions and using those findings to impose an increased sentence under the Armed Career
Criminal Act." (emphasis added) (citation omitted)). Therefore, the Ohio Supreme Court's decision
that it did not violate the Sixth Amendment for the trial court to determine Petitioner was a repeat
violent offender under Revised Code § 2929.01(DD) is not contrary to or an unreasonable
application of federal law.

Petitioner argued to the Ohio courts that under § 2929.14(D)(2), the court could not impose
additional punishment on the repeat violent offender specification without engaging in judicial fact-
finding, and therefore his Constitutional rights were violated. After *Foster*, the Ohio Legislature
amended § 2929.14(D)(2) to provide for discretionary additional penalties in subsection (a) – "the
court may" – if certain factors are met, and mandatory additional penalties in subsection (b) – "[t]he

13

court shall" – if certain factors are met. *See* § 2929.14(D)(2)(a)-(b).[3] Two of the five factors in the subsection (a) analysis – sections (iv) and (v) – contain substantially the same language previously held by *Foster* to violate the Sixth Amendment. *See Foster*, 109 Ohio St. 3d at 24 (citing former Rev. Code § 2929.14(D)(2)(b)(i)-(ii)).

Petitioner, however, meets the criteria of subsection (b), which provides for a mandatory penalty with no Sixth Amendment-violative findings. Rather, a penalty enhancement under subsection (b) merely requires the court to determine: 1) Petitioner is a repeat violent offender under § 2941.149; 2) Petitioner has been convicted of three or more offenses described in § 2929.01(DD)(1) – including those in the current prosecution – within the preceding 20 years; and 3) "the offense or offenses of which the offender currently is convicted . . . [is a] felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole." Rev. Code. § 2929.14(D)(2)(b). The court found Petitioner to be a repeat violent offender. (Ex. 7, Doc. 7-1, at 17). As explained by *Hunter*, this does not require unconstitutional judicial fact-finding. 123 Ohio St. 3d at 171-72.  In the present case, the court found Petitioner guilty of a notice of prior conviction – citing a 1990 rape conviction. The court was sentencing Petitioner on three counts of rape and two counts of kidnapping.  Two of the rape counts merged with one kidnapping charge and the third rape merged with the second kidnapping charge for sentencing. (Ex. 7, Doc. 7-1, at 17). Rape as defined by Revised Code § 2907.02, and kidnapping as defined by § 2905.01 are "offenses of violence" under Ohio law. Rev. Code. § 2901.01(9)(a). They are also both first degree felonies. *See id.* §§ 2907.02(B); 2905.01(C)(1). Therefore, the second and third

---

[3] This amendment occurred after the defendant in *Hunter* committed his crime, and was therefore not at issue in *Hunter*.

requirements are met. Pursuant to Revised Code § 2929.14(D)(2)(b), Petitioner could be sentenced to an enhanced penalty for the repeat violent offender specification without any unconstitutional judicial fact-finding.  Therefore, the Ohio Supreme Court's decision was not contrary to or an unreasonable application of clearly established federal law and Petitioner is not entitled to habeas relief on this claim.

### *Second Assignment of Error on Direct Appeal - Failure to State Findings on Repeat Offender Specification*

The argument under Petitioner's second assignment of error reads, in its entirety:

> R.C. 2929.14(D)(2)(e) requires a trial court to state its findings for imposing addition[al] prison time on a repeat violent offender specification. In its entirety, R.C. 2929.14(D)(2)(e) reads: "When imposing a sentence pursuant to division (D)(2)(a) or (b) of this section, the court shall state its findings explaining the imposed sentence." The trial court failed to[] comply with R.C. 2929.14(D)(2)(e); as such, Mr. Bruce's sentence must be vacated and the matter remanded for a new sentencing hearing.

(Ex. 9, Doc. 7-1, at 60; *see also* Ex. 13, Doc. 7-1, at 152-53). Although this claim was properly exhausted, Petitioner did not allege this action violated federal law or the Constitution. "The writ of habeas corpus is not available to remedy errors of only state law."  *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)).  Because Petitioner's claim contains no federal constitutional or statutory claim, it is not cognizable on federal habeas review.

### *Third Assignment of Error on Direct Appeal - Due Process Challenge to Indictment*

Petitioner properly exhausted his claim that the indictment in his case violated due process by failing to include the elements of the sexually violent predator specification. (Exs. 9 & 13, Doc. 7-1, at 60-65; 153-55).

The Ohio appellate court overruled this assignment of error, stating:

{¶ 30} In his third assignment of error, appellant asserts that the indictment was defective because it did not include all of the essential elements of the sexually violent predator specification. He argues that the language in the indictment and the language of R.C. 2941.148 is insufficient to charge an offense and therefore the SVP conviction must be vacated.

{¶ 31} The Ohio Supreme Court has stated that, "a specification is, by its very nature, ancillary to, and completely dependent upon, the existence of the underlying criminal charge or charges to which the specification is attached." *State v. Nagel*, 84 Ohio St.3d 280, 286, 1999-Ohio-507. Additionally, that court has previously referred to specifications as penalty enhancers, rather than separate violations or offenses. *State v. Evans*, 113 Ohio St.3d 100, citing *State v. Foster*, supra, at-71. Therefore, a sexually violent predator specification is not a separate criminal offense, it is a sentencing enhancement that must be properly stated in the indictment as part of the underlying charge.

{¶ 32} The requirements for an indictment containing a sexually violent predator specification are contained in R.C. 2941.148 that provides in pertinent part: "A specification * * * that an offender is a sexually violent predator shall be stated at the end of the body of the indictment, count, or information and shall be stated in substantially the following form: SPECIFICATION (OR, SPECIFICATION TO THE FIRST COUNT). The grand jury (or insert the person's or prosecuting attorney's name when appropriate) further find and specify that the offender is a sexually violent predator." R.C. 2941.148(A)(2).

{¶ 33} A review of the indictment in this case demonstrates that each of the ten counts that included a sexually violent predator specification mirrored the statutory language as provided by R.C. 2941.148. Accordingly, the third assignment of error is overruled.

*Bruce*, 2009 WL 626112. The Ohio Supreme Court did not accept Petitioner's appeal of this claim.

It is well established that there is no federal constitutional right to be charged in an indictment. *Branzburg v. Hayes*, 408 U.S. 665 (1972). "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002). "Fair notice has been given when 'the offense [is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for

16

trial.'" *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)).

*Standard of Review*

Because the state court reached the merits of Petitioner's claim, but did not articulate its analysis of the Constitutional question, the Court applies "modified AEDPA deference"; that is, the Court "conduct[s] an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005); *see also Sanborn v. Parker*, 629 F.3d 554, 578 (6th Cir. 2010) (finding "modified AEDPA deference" applies where state court simply stated: "Although we have considered each claim carefully, we found none to amount to prejudicial error so as to require reversal of the convictions or sentences.").

*Analysis*

The indictment provided sufficient notice to Petitioner of the specification to satisfy due process concerns. Each count containing the sexually violent predator specification included the language required by Revised Code § 2941.148 – "The Grand Jurors further find and specify that the offender is a sexually violent predator" – as well as a citation to that statute. (Ex. 1, Doc. 7-1, at 1-10). Revised Code § 2941.148(B) states:

> In determining for purposes of this section whether a person is a sexually violent predator, all of the factors set forth in divisions (H)(1) to (6) of Section 2971.01 of the Revised Code that apply regarding the person may be considered as evidence tending to indicate that it is likely that the person will engage in the future in one or more sexually violent offenses.

17

Revised Code § 2971.01(H)(1) defines "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." The grand jury's statement and the statutory citation provided Petitioner with "[s]uch definiteness and certainty [as] are required [to] enable a presumptively innocent man to prepare for trial." *Koontz*, 731 F.2d at 369. *Cf. Williams*, 467 F.3d at 536 (holding that "[t]he indictment's reliance on references to the principal statutes to identify the mens rea elements does not render the indictment insufficient because Williams still had adequate notice of the offenses to prepare his defense. . . . Williams could have located the statutes and determined the mental states required for the offenses with which he was charged."). Indeed, although Petitioner's appellate brief argues generally that the indictment provided insufficient notice of the specification – relying primarily on Ohio law – it does not argue Petitioner was unable to adequately prepare a defense to the specification. Therefore, the Ohio appellate court's decision on this issue did not result in a decision that was contrary to or an unreasonable application of federal law.

### Motion for Appointment of Counsel

Finally, Petitioner requests counsel to assist with his Petition. (Doc. 9.) It is well established that federal habeas corpus petitioners have neither a Fifth nor Sixth Amendment right to the appointment of counsel. *See Douglas v. Maxwell*, 357 F.2d 320, 321 (6th Cir. 1966). The appointment of counsel for federal habeas petitioners who, like Petitioner, have filed pursuant to § 2254, is governed by 18 U.S.C. § 3006A. *See* 28 U.S.C. § 2254(h). In cases where the Court determines that an evidentiary hearing is required, the appointment of counsel is mandatory. *See* Rule 8 of the Rules Governing 28 U.S.C. Section 2254 Cases. Otherwise, the decision to appoint counsel for a federal habeas petitioner is within the Court's discretion, and representation may be

provided whenever "the interests of justice so require." 18 U.S.C. § 3006A(a)(2). A district court does not abuse its discretion by declining to appoint counsel where the issues in the case are straightforward and capable of resolution on the record or the Petitioner has a good understanding of the issues and the ability to present forcefully and coherently his contentions. *See Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986); *Swazo v. Shillinger*, 23 F.3d 332, 333 (10th Cir. 1994); *Reese v. Fulcomer*, 946 F.2d 247, 264 (3d Cir. 1991).

Here, the issues are straightforward and can be easily resolved on the record. Therefore, an appointment is not appropriate in this case.  Petitioner's motion is denied.

### Conclusion and Recommendation

Because the issues may be resolved on the record, Petitioner's motion for appointment of counsel is denied. All of Petitioner's claims are either defaulted, or did not result in a decision contrary to or an unreasonable application of federal law. There has been no demonstrated need for an evidentiary hearing. Finally, Petitioner has not established any error resulting in a denial of fundamental fairness or cause to hesitate due to the probability of actual innocence. Therefore, the undersigned recommends the court deny the Petition.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).